Good morning, your honors. May it please the court, I'm Tim Scott, federal defenders of San Diego, for the appellant Kevin Bautista. There are three reasons why a Fourth Amendment violation occurred in this case. First, there was a legitimate expectation of privacy in the room that Kevin Bautista occupied as his home. Second, the police officer's conduct did constitute a search under the Fourth Amendment. And then third, the district court's analysis of consent, which was necessary to search the belongings in the room in any event, was flawed both legally and factually. But first, the legitimate expectation of privacy. Did the district court ultimately actually find consent? I don't believe it did. The district court at most, and I believe it's on page 29 or ER 29, said that it was probable that there was consent. The district court never made a factual finding that there was actually consent. I think that's problematic legally because the standard is not probable consent. It's that consent actually occurred and proof of that by a preponderance of the evidence. But it's troubling factually as well because under Federal Rule of Criminal Procedure 12E, I believe. Well, after it says probable, on the next page, he then says it's arguable. I don't know what all those things lead you to, to tell you it's arguable that the officer entered into the zone of privacy in violation of the Fourth Amendment. Testimony is unclear. And then it says regardless, such a determination is immaterial. So as I was reading this, it seems to me he just decided in the end that he didn't have to decide whether there was consent. I think that's probably a fair characterization. And the problem with him, with the district court deciding that it doesn't matter in any event, is because the testimony showed that there was no contraband within plain view when the police officers were in a room. So even assuming arguendo. Well, I think what he's saying, the reason he says it's immaterial, as he puts it, is because he rests his decision on the absence of a legitimate expectation of privacy. Correct. And the problem with that. What was immaterial, though, he said, was whether the officer's foot was over the threshold or not. Correct? I think that the judge is right in that he found that it was immaterial in any event, whether the judge came first and whether the officer came first. Whether there was an entry or not. Right. And the fundamental problem with that is that the officers didn't notice any contraband in plain view. They actually rifled through bags and bins and belongings that one yet maintains a reasonable expectation of privacy. I don't understand. I don't understand the significance of that point. If it's – if it is true that when they said police, open the door, door opens, that's an illegal search. Correct. At that point. Exactly right. All right. If – you would say so anyway, right? Under United States v. Lender. You would say that's an illegal search. That's correct. Okay. If the officer then stops the door from closing, it doesn't matter whether he enters a room or not to do it, does it? He's letting the illegal search continue to proceed by holding the door open, which he had no right to have open in the first place. Is that true? Is that your point? Exactly right. I agree that the search commenced. When she says come in, there's already an illegal search in progress. So how can that be proper consent since there's already an illegal search in progress and the officers are obviously going to continue this illegal search because they're holding the door open? That's one of our arguments. Correct. That's correct. Okay. And then if that's – if all that's illegal up to then, then her last consent's also illegal. That's your point, right? That's correct. So it seems to turn on open the door. Or it might not turn on open the door. The threshold is do they have standing. And if they do, then it turns on open the door, correct? That's true. And it's really two questions. We absolutely agree that the search began the moment that the police said please open the door under Windsor. But importantly, even if there's no legitimate expectation of privacy at the door, our argument still remains that by saying it was probable or it's arguable that she consented later, the court had to find as a fact that she consented for the search of the belongings, regardless of whether or not there was a search at the door. Because one's personal belongings still maintain the Fourth Amendment protections afforded them, even if the room itself and whatever in plain view of the room does not. So that there's consent at the door. But there also needs to be independent consent for the belongings within the room. Well, but if there's no expectation of privacy in the room, then I take it the argument is anybody could walk into that room, right? They have no right to it. That's the argument. And since anybody can, the police can walk in. So there's nothing wrong with the police walking into that room. There they are. If there's no expectation of privacy. If you lose the threshold. If we lose the threshold. Why don't we talk about the threshold and see how you do with the expectation of privacy. The facts. Does the record show that Mrs. Bautista said that somebody named Ray or someone else had rented the room? What other evidences are in the record about how the room was rented? It's both what Mrs. Bautista said. And I believe that the record shows that according to hotel management, reservations were made through a service called lodgings dot com. And that was done by a third party. I think that the government attributes a great deal of their case to statements that Mr. Bautista made after being arrested. We contested those as a separate issue. But apparently within that statement, too, according to the agent's accounts, Kevin Bautista, the appellant, also said that the third party had rented the room for them. How were they checked into the room? They were checked in. I believe that Kevin Bautista went himself and checked into the room under his own name. And that's what's so important in this case is that Kevin Bautista wasn't the off-season burglar that we're hearing about. He wasn't there sneakily or surreptitiously. He was a registered tenant. His name was on it. He'd been there for four days and four nights. He had a key. He had possessions in the room. Everyone knew that that was his room. But there's no evidence that he used the credit card when he checked in. Exactly right. And we don't know whether he had actually tried to pay. I know that, you know, most hotels you pay when you check out. And, in fact, the hotel was still willing to make other payment arrangements. Most hotels I go to want the card when you check in. To hold the room. And then at the end, you can switch cards, you can pay in cash, or you can do whatever you want. But they want to see a card when you check in. That's right. Just to hold the room. What difference does the card make? I'm sorry? What difference does the card make? Suppose he did get it fraudulently. Does that make any difference? Let's assume that he got in there fraudulently. The Kevin Bautista knowing lease? I don't think so. If Kevin Bautista, and if it was proven. Let's say it's proven. Okay. In my world, it's proven. He did it. He did big naughty. He used a fraudulent card to get himself into this room. And there he's been for four days. And the management has not thrown him out. Fair enough. Now, do you lose? No. Here's why. Management had not asked him to leave yet. They hadn't terminated the lease. They hadn't evicted him. They hadn't done a private act of repossession. And that, frankly, is what's required under the law. That's why I cited to the court the Darius and Henderson and Huffhines. Because all of those decisions turn on whether or not the hotel or the owner of the rental car or whatever it is acts to reclaim the room, a private act of repossession. The reason. You don't care about this credit card stuff, right? I mean, it's just, hey, he's in there. Nobody's evicted him. He's got a right of privacy. He's the possessor of the room, and it is his abode. And so he does have Fourth Amendment privileges, at least until a time that they ask him to leave. The reason it's important what the hotel does and the relationship between the hotel and Kevin Bautista is because under the Fourth Amendment, reasonable expectations of privacy often turn on the relationships between the parties and on the relationships between people. That's why I cited Minnesota v. Olson, not because an overnight guest has a property interest or has any statutory right to stay overnight at a person's place, but because the owner of the property affords them a certain level of privacy. Counsel, is your argument that until a hotel discovers that the room has been leased fraudulently, the fraudulent procurer of the room has a legitimate expectation of privacy? It's my argument that until, two things, it's resolved that there was actually some fraud, or at a minimum, secondly, that they privately reclaim the room, that they ask him to leave, that they reclaim the premises. What's your best case authority for the proposition that one who fraudulently procures a room has a legitimate expectation of privacy until evicted? What's your best case to support that argument? The best cases for our argument are Darius and the cases that precede it, which, as I discussed, show that until there's a private act of repossession, there does Those cases don't involve specifically a fraudulent procurement of the room. No, they don't. No, they don't. And I would fight with the Court on the premise that there was fraudulent procurement by Kevin Bautista. I understand. Correct. But we're assuming that that's true. If that's true, those cases do not deal with the offense. That's right. There isn't, I can't cite a case that says that a person who uses fraud to procure a room then has expectations of privacy. Instead, it turns on possession. And like I said, if a person who overstays their lease, who's no longer there legitimately, who is not in proper possession of the room, yet stays there with the acquiescence of the hotel and isn't asked to leave, if they have Fourth Amendment protections, then it seems like someone like Kevin Bautista should, particularly when it hasn't been shown that he actually engaged in credit card fraud, and particularly while still being investigated and before they asked him to leave. Thank you, Your Honors. May it please the Court. Good morning, Your Honors. Mark Nsiong, Assistant United States Attorney for the District of Nevada. This was a case I prosecuted when I was with the Southern District of California. This case can be decided on the very first issue that's presented, and that is whether the defendant had a legitimate expectation of privacy. He did not. The Sarkeesian case states there are two elements required. First, that the defendant had a subjective expectation of privacy, which we will concede that he had that in this case. Secondly, however, it is required that that expectation must be reasonable to society, and it is the defendant's burden to show that. By definition, in this case, the only way he can show that that expectation was reasonable to society is that he had not obtained that room through fraud or collaborated with anyone else to obtain that room by fraud. Is it your position that anybody in the world could enter that room since he has no expectation of privacy in it? Anybody can enter that room? Yes. Anyone in the world can come off the street and go into his room because it was done with a well? Yes. Is that your position? Well, a private citizen would be a trespasser as well at that point. A law enforcement officer there to investigate a potential crime obviously is a different story. Okay. So your position is that the people can in the room, but police officers have some special right to enter people's property, right, even though that person has possession, and the owner of the property hasn't told him to get out, even though the owner already knows there might be a problem with a credit card. The owner hasn't told him to get out. And your position is that any police officer, knocking or not knocking, can just enter the room because he feels like it. Is that correct? That's correct with the exception that in this case, the – I don't want it to hinge on the fact that the motel management didn't – hadn't told him to get out yet. Mr. Bautista wasn't there when the crime – Well, but Mrs. Bautista was there. Correct. And there was a clerk who was not registered to the room who claimed to have no information or idea as to what – So you would say when I check into a hotel, my wife is going to have to register also? I've never had a hotel ask me to do that. Well, I think hotels always ask how many guests are going to be in the room. They ask me separately? They may not specifically ask who's going to be in the room, but they ask how many guests are going to be in the room. And they know there were two in this room?  Mr. Bautista was there. They knew that? No. In fact, the maid, when she went to the room and knocked, she heard the female voice, and that surprised her, which she reported directly to the manager, who was as well surprised, which is why she immediately then gave the officers a passkey to go find out who was in that room, because Mr. Bautista – But she did not give the officer a passkey, the manager says. Well, the – She gave a passkey to the outside door. Right. That's what I meant by the passkey. The officer thinks he has a passkey to get into the room. Correct. And maybe he does, right? We don't know. I mean, he believes he does, but the manager was adamant that the key she gave him would only get him into the common area. But he – it seemed to work when he put it in the door. Well, we don't know. I mean, he says that he heard something or that it appeared to unlock, but he didn't actually unlock and open – turn the handle. The door was open from the inside by Mrs. Bautista almost immediately after. His impression from putting it in there was that it did operate the door. That was his impression, but he did not open the door himself. Well, it's a little hard to tell. He put the card in. He said at the same time someone opens the door, it's hard to tell what the mechanical process was. Well, it is, but it's unconscionable that he did not turn the handle. The record is absolutely clear on that. The door was open from the inside by Mrs. Bautista. That's – there's no dispute about that, I don't think. So the evidence in this case – In this case, they weren't interested in expelling Mr. Bautista. I don't think that's – They were interested in collecting their money. They said they would have been happy to make arrangements to let him stay. Well – And that's their policy at that hotel – motel. The policy – right. But I think if you look at the affidavit more closely, this was a first-time occurrence, as far as this manager knew. Her affidavit stated that she had never had an occurrence where someone had reserved the room with a fraudulent credit card. The instances where she had talked about, the five or six times in the past where they had done the arrangement you're referring to, was someone who was – had already been staying there and had overstayed their required or registered amount of time. That is – But it's very clear that she had not asked the officers, nor had she herself tried, to have these people put out of the room, right? She had never said, it's terminated. Your tenancy is over. She never said that. In fact, she said the contrary. That's what she says. Well, I don't think that she – For what reason would she have called the police? If her goal was truly only to collect money, surely she could have done that herself or with another employee at the motel. There's no reason to call the police if that was her only goal. Well, here's what she says. If the police had found out, found Mr. Battista, and he could not explain the credit card, I would have asked – I would have then asked the police to evict him unless I could make other arrangements. That's what she says. Correct. We don't have any question about what's in her mind. What's in her mind is she's asking the police to look into it. And if she – if it really is a bad situation, then she'll make another deal and he can  Isn't that what she says? And then she was going to evict him if she couldn't. And this is an individual – She couldn't get him to pay. Right. How was he going to pay? How was he going to pay? Cash. He had to pay cash. He's got lots of it. Lots of counterfeit money. Right. I don't think that's what the motel had in mind. Suppose he gave her a check that might bounce later. He gives her a bad check. The record is – And she just said, you can say, right? I don't know. Or he gives her counterfeit money. I don't think the motel would take a check from someone who reserved a car for the fraud. He gives her this wonderful counterfeit money. And she takes it and says, you can stay, right? I think at that point he's still – he's obviously still a fraudulent obtainer. That room has got no standing. The question is she hasn't evicted him yet, right? Not yet. And you would say that whether – that's what I was trying to get to in the very first question I asked you. Whether the motel evicts the person or not, a police officer, any police officer can come along and enter that property. Correct? If that person has obtained the room fraudulently. Yes. Yes. Okay. It doesn't turn on the eviction. No. The evidence in this case is clear that this room was obtained fraudulently. The motel received a call from the credit card company who advised that they had spoken with the true cardholder who was disputing the charges. And this was a – But it doesn't matter whether he's a participant in the fraud. If somebody goes on the road for a corporation, for Enron, and Enron pays the bill for the company official with fraudulently obtained funds, that official's room can be searched even if he has no idea that the room was obtained fraudulently. That's a different scenario because in that case, there's no – there's no mens rea. So he has to know about the fraud? That person's acting in good faith. The business driver's acting in good faith. I presume that the person who made the travel arrangements for Enron is acting in good faith. No, no. I don't assume that. I don't assume that they were – all knew they were engaged in a fraud except for this poor innocent person who's off in a room. He doesn't know that they used – that they're using fraudulently obtained funds. Well – Does it – does it matter whether he knows that it was fraudulent credit card? Yes, it does. In this case, the court found that Mr. Bucksista did fraudulently obtain the room. And there was evidence in the record to establish that. What was the evidence in the record that shows you knew it was obtained with a fraudulent credit card? Well, the court made logical inferences based on a number of facts that were in the record. First of all, number one, we've discussed this already, that the room is obtained with a stolen credit card. There's no question about that. Mr. Bucksista was the person that the name was registered for. He shows up and registers himself in person, gives his license plate number to his car. He's in a room that is obtained by the same credit card that was used to obtain a second room in the car. Can you tell me where these findings are by the district court that he knew about it? Yes. ER 23, where the court states the defendant procured the room in fraudulent fashion. And it's line three and four. And this, of course, notes the distinction that I have made already, and that is the crucial one, is that all the cases cited by Mr. Scott. Page 23 of the record? Right. ER 23. Lines three and four? Lines three and four. It's page five. My lines three and four read, however, this case bears a crucial distinction. Do I have the wrong? Since the defendant procured the hotel room in a fraudulent fashion. And that's the distinction. What is that? What is it? What's the basis of that conclusion? In the opinion, what? Well, it doesn't state. The facts I'm giving you are all facts that were in the record that I am indicating that the district court made logical inferences of. It does not make a fact-by-fact finding. There's no memorandum of fact findings. Okay. The logical inference comes from the fact that it was procured fraudulently and that he checked into the room. That he was – that he checked into the room, that this room was preserved with the same stolen credit card that was used to reserve another room in the hotel. It was procured fraudulently. It was procured fraudulently, in fact. Right. And he checked into the room. And it was reserved. They indicated it was reserved by someone named Ray, who was the person that was in the room, who she said he knew, who he gave $600 in counterfeit money to for the room, supposedly. Right. Mrs. Batista claims that Ray reserved it for them. She says that they – There's no question Ray reserved it. You all agree. Ray reserved the room. Ray used a fraudulent credit card. Okay. That's one, two. Now, where is step three, that the defendant knew that Ray was going to use a fraudulent credit card? Well – What evidence is there of that? Well, I think the evidence is more that Mr. Batista is the one that did it. The only evidence that says that Ray did it comes from Mr. Batista. The evidence is more compelling to me that Mr. Batista is the one who reserved this room over the Internet, in his own name, showed up and checked in under that name. And as the court pointed out earlier, unfortunately, we don't have exactly how that happened, but most hotels require that the credit card that the reservation was made in before you're allowed to check in, or at least another credit card. That's the – that's – we're not saying our – our position is not that Ray did this. Our position is that Mr. Batista did this. Okay. The crucial distinction between these cases that I want to – I want to bear – I know you're two minutes over your time. Oh, I'm sorry. Thank you. Yes, counsel. You have about a half minute, I think. Thank you, Your Honor. I'll give you a full minute. Fair enough. Thank you very much. I think that based on the record and what the district court wrote in its order, there never was a finding that Kevin Batista engaged in any kind of credit card fraud. The sentence that was just pointed out assumes that this was the case. And it appears to be more of an application of law and using as a premise that fraud was used to obtain the room. And I think that the record doesn't show at all that he actually did that and the district court didn't make any findings like that. So with that, we would submit. Thank you. Thank you, counsel. The case is arguably submitted.
judges: Reinhardt, Fernandez, Rawlinson